UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ANGELA H.,[1] | ) |
| | ) |
|     *Plaintiff*, | ) |
| | ) |
|     *v.* | )    No. 1:22-cv-00395-MG-RLY |
| | ) |
| KILOLO KIJAKAZI, Acting Commissioner of the Social Security Administration, | ) |
| | ) |
|     *Defendant*. | ) |

## ENTRY REVIEWING THE COMMISSIONER'S DECISION

On February 26, 2019, Plaintiff Angela H. applied for Title II disability income benefits ("DIB") from the Social Security Administration ("SSA"), alleging a disability onset date of October 31, 2015. [Filing No. 9-5 at 2-5; Filing No. 9-6 at 12.] Her application was initially denied on June 21, 2019, [Filing No. 9-4 at 2-5], and upon reconsideration on August 26, 2019, [Filing No. 9-4 at 11-13]. Administrative Law Judge Gladys Whitfield (the "ALJ") conducted a hearing on July 20, 2021. [Filing No. 9-2 at 32-83.] The ALJ issued a decision on August 5, 2021, concluding that Angela H. was not entitled to receive benefits. [Filing No. 9-2 at 13-30.] The Appeals Council denied review on December 23, 2021. [Filing No. 9-2 at 2-6.] On February 25, 2022, Angela H. filed this civil action asking the Court to review the denial of benefits according to 42 U.S.C. § 405(g). [Filing No. 1.]

---

[1] To protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

1

The parties consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. [Filing No. 7.] For the reasons set forth below, the Court **REVERSES** the ALJ's decision denying Angela H. benefits and **REMANDS** for further proceedings.

## I.
## STANDARD OF REVIEW

"The [SSA] provides benefits to individuals who cannot obtain work because of a physical or mental disability." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1151 (2019). Disability is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018) (citing 42 U.S.C. § 423(d)(1)(A)).

When an applicant appeals an adverse benefits decision, the Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Id.* For purposes of judicial review, "substantial evidence" is such relevant "evidence that 'a reasonable mind might accept as adequate to support a conclusion.'" *Zoch v. Saul*, 981 F.3d 597, 601 (7th Cir. 2020) (quoting *Biestek*, 139 S. Ct. at 1154). "Although this Court reviews the record as a whole, it cannot substitute its own judgment for that of the SSA by reevaluating the facts, or reweighing the evidence to decide whether a claimant is in fact disabled." *Stephens*, 888 F.3d at 327. Reviewing courts also "do not decide questions of credibility, deferring instead to the ALJ's conclusions unless 'patently wrong.'" *Zoch*, 981 F.3d at 601 (quoting *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017)). The Court does "determine whether the ALJ built an 'accurate and logical bridge' between the evidence and the conclusion." *Peeters v. Saul*, 975 F.3d 639, 641 (7th Cir. 2020) (quoting *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014)).

The SSA applies a five-step evaluation to determine whether the claimant is disabled. *Stephens*, 888 F.3d at 327 (citing 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4)). The ALJ must evaluate the following, in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform her past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000), *as amended* (Dec. 13, 2000) (citations omitted). "If a claimant satisfies steps one, two, and three, she will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then she must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After step three, but before step four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id.* The ALJ uses the RFC at step four to determine whether the claimant can perform her own past relevant work and if not, at step five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 404.1520(a)(4)(iv), (v). The burden of proof is on the claimant for steps one through four; only at step five does the burden shift to the Commissioner. *See Clifford*, 227 F.3d at 868.

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Stephens*, 888 F.3d at 327. When an ALJ's decision does not apply the correct legal standard, a remand for further proceedings is usually the appropriate remedy. *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021). Typically, a remand is also

appropriate when the decision is not supported by substantial evidence. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). "An award of benefits is appropriate only where all factual issues have been resolved and the 'record can yield but one supportable conclusion.'" *Id.* (quoting *Campbell v. Shalala*, 988 F.2d 741, 744 (7th Cir. 1993)).

## II.
### BACKGROUND

Angela H. was 50 years old on the date of her alleged onset of disability and has a high-school education. [Filing No. 9-2 at 53.] She has past relevant work experience as a laundry superintendent, file clerk, medical secretary, and production assembler. [Filing No. 9-2 at 69.] Angela H.'s original application alleged that she can no longer work because she suffers from major depression, degenerative disc disease, arthritis, and anxiety.[2] [*See* Filing No. 9-4 at 5.]

The ALJ followed the five-step sequential evaluation set forth in 20 C.F.R. § 404.1520(a)(4) and concluded that Angela H. was not disabled. Specifically, the ALJ found as follows:

- Before Step One, the ALJ found that for purposes of DIB eligibility, Angela H.'s date last insured[3] ("DLI") is June 30, 2021. [Filing No. 9-2 at 18.]

- At Step One, Angela H. had not engaged in substantial gainful activity from October 31, 2015 (her alleged onset date) until June 30, 2021 (her DLI). [Filing No. 9-2 at 18.]

- At Step Two, Angela H. had the following severe impairments: "right hip bursitis and lumbar spine degenerative disc disease and spondylosis." [Filing No. 9-2 at 19.]

- At Step Three, Angela H. did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments—specifically Listings 1.15 (disorders of the skeletal spine resulting in compromise of a

---

[2] The relevant evidence of record is amply set forth in the parties' briefs and need not be repeated here. Specific facts relevant to the Court's disposition of this case are discussed below.

[3] To be eligible for DIB benefits, SSA regulations require a claimant to establish that he or she was disabled as of the date he or she was last insured. *See* 20 C.F.R. § 404.131.

4

- nerve root); 1.16 (lumbar spinal stenosis resulting in compromise of the cauda equine); and 1.18 (abnormality of a major joint in any extremity). [Filing No. 9-2 at 20-21.]

- After Step Three but before Step Four, the ALJ determined that at the time of her DLI (June 30, 2021), Angela H. had the RFC to perform "light work as defined in 20 CFR 404.1567(b) except no ladders, ropes, or scaffolds. She can occasionally climb stairs and ramps, balance, stoop, kneel, crouch, and crawl. She can frequently reach overhead, forward, and to the side. She can handle, finger, and feel frequently. She is limited to work that can be performed on even terrain and must avoid ambulating on wet slippery surfaces. No more than occasional exposure to wetness. She must avoid all use of hazardous moving machinery and exposure to unprotected heights. No exposure to strobe or flashing lights in the ordinary course of business. No job where driving or operation of a motorized vehicle is required to perform functions of the job." [Filing No. 9-2 at 21.]

- At Step Four, relying on the testimony of a vocational expert (the "VE"), the ALJ found that through her DLI (June 30, 2021), Angela H. was capable of performing her past work as a laundry superintendent, file clerk, medical secretary, and production assembler. [Filing No. 9-2 at 23.] Notwithstanding this finding, the ALJ continued to Step Five and asked the VE to determine whether there were other jobs (aside from her past work) that Angela H. could perform. [Filing No. 9-2 at 24.]

- At Step Five, once again relying on the testimony of the VE, and considering Angela H.'s age, education, work experience, and RFC, the ALJ concluded that there were other jobs that existed in significant numbers in the national economy that she could perform as of her DLI, such as marker, small products assembler, and inspector/hand packager. [Filing No. 9-2 at 24-25.]

## III.
### DISCUSSION

Angela H. raises three issues on appeal. First, she argues that the ALJ erred by not seeking a medical opinion about an impairment with her right hand that presented shortly before her DLI. [Filing No. 16 at 1.] Second, she contends that ALJ failed to give good reasons for discounting Angela H.'s testimony about her symptoms. [Filing No. 16 at 17.] Third and finally, she argues that the Appeals Council erred when it concluded that newly submitted evidence regarding her right hand was not new and material. [Filing No. 16 at 1.]

### A. Expert Review of Angela H.'s Right Hand

The issue of timing is central to the issues raised by Angela H. on appeal, so the Court starts with a review of the relevant timeline. Angela H. was required to establish that she became disabled before her DLI of June 30, 2021. *See McHenry v. Berryhill*, 911 F.3d 866, 869 (7th Cir. 2018) (per curiam).

Dr. Levine Eric Levine, MD, PhD, MSPH performed a consultative examination of Angela H. on June 14, 2019, and he did not observe any issues with Angela H.'s hands or fingers. [Filing No. 9-7 at 308-18.] The state agency consultants' June 21, 2019 and August 23, 2019 reports likewise do not note any issues with Angela H.'s right hand and fingers. [Filing No. 9-3 at 3-15; Filing No. 9-3 at 17-31.] Indeed, the consultants opined that Angela H. had no manipulative limitations. [*Id.*]

The current issues with Angela H.'s right hand and fingers first appeared in her medical records in early April 2021, just 3 ½ months before her July 20, 2021 hearing with the ALJ and 3 months prior to her DLI of June 30, 2021. [*See* Filing No. 9-8 at 12.] During an April 3, 2021 emergency room visit for her pain in her right hand, Angela H. reported that the issues with the fingers in her right hand began during "the last few months." [Filing No. 9-8 at 12.] At that time, Angela H. was observed to have:

> Right third through fifth fingers held in slight flexion. Letter prominent tender tendons of the palm. She is able to extend but with some weakness. Her ulnar nerve sensory function is intact but motor function is somewhat limited due to pain. She has a negative Tinel's at the cubital tunnel. No lateral epicondyle tenderness. Brisk capillary refill to the fingers.

[Filing No. 9-8 at 15.] The emergency room physician suspected that Angela H. had Dupuytren's Contracture[4] of the right hand and referred her to a hand surgeon. [Filing No. 9-8 at 15.]

Angela H. saw orthopedic surgeon Dr. Kelly Graner, MD on April 14, 2021 for further evaluation of her right hand. [Filing No. 9-8 at 52.] Dr. Graner's note from that encounter indicates that Angela H. "first noticed palmar changes at the end of January." [Filing No 9-8 at 52.] Dr. Graner's exam showed that Angela H. had "Wartenberg sign,[5]" "[s]evere intrinsic atrophy," "MF [middle finger], RF [ring finger], SF [small finger] claw posture," "[l]imited ROM of the fingers," and a "[n]egative table top test." [Filing No. 9-8 at 53.] Dr. Graner diagnosed Angela H. with right palmar Dupuytren's disease and communicated the following regarding treatment for the condition:

Plan:
1. We discussed the etiology and pathology of Dupuytren's disease and treatment recommendations. It is important to monitor for development of contracture, specifically discussing the table top test to help monitor for this. Treatment is typically reserved for contractures that are equal to or greater than 20-30 degrees depending on the joint involved. Continue to monitor for contracture. Patient should follow up if contracture develops or there are concerns regarding the disease progression.
2. RUE EMG
3. Encourage PROM of all digits to prevent stiffness.

[Filing No. 9-8 at 53.]

The ALJ held Angela H.'s hearing on July 20, 2021, and then issued a decision on August 5, 2021. [Filing No. 9-2 at 13-25.] The ALJ found that Angela H.'s "Right Palmar Dupuytren's contracture" to be a non-severe impairment, noting that "[p]hysical exam findings in April 2021

---

[4] Dupuytren's Contracture is a disorder in which "the palmar fascia—a fibrous membrane below the skin—becomes progressively contracted, making it difficult to extend one or more fingers…. Surgery … is necessary to correct the contracture by incising and removing the fasicia. Depending on the extent of the disease, the process may be resolved partially or completely." *Dupuytren's contracture*, 8 Attorneys Medical Advisor § 72:27.

[5] Wartenberg sign is "a collection of signs including flexion of the thumb when the patient attempts to flex the four fingers against resistance." *Wartenberg Sign*, Stedman's Medical Dictionary (2014 ed.).

included a negative tabletop test, and the plan was to just monitor for contracture." [Filing No. 9-2 at 19.] Referring to Dr. Levine's exam two years' prior in June 2019, the ALJ noted that at that time, Angela H. had "the ability to write, pick up a penny off a hard flat surface, and tie a bow." [Filing No. 9-2 at 19.] As part of the RFC, the ALJ found that Angela H. had the ability to "handle, finger, and feel frequently"—an additional limitation not included in any medical opinion in the record. [Filing No. 9-2 at 21.]

At some point after the July 20, 2021 hearing, Angela H. underwent EMG testing on her right hand. On July 30, 2021, Dr. Graner called Angela H. about the results of the testing and new recommendations. [Filing No. 9-2 at 31.] The note from that phone encounter (which Angela H.'s counsel submitted to the Appeals Council as new evidence) states:

> I called and spoke with the patient earlier today to discuss her EMG results. The right upper extremity EMG demonstrated a severe ulnar motor neuropathy at the level of Guyon's canal based on testing. Given the findings on physical examination as well as on the EMG, which clinically correlate, I recommend to the patient to proceed with right ulnar nerve decompression at the level of the wrist, Guyon's canal. We discussed the procedure, recovery expectations, as well as risks and benefits with her today including pain, bleeding, infection, swelling, stiffness, and potential damage to surrounding structures. She agreed and wished to proceed with surgery under IV sedation anesthesia.
>
> The patient currently does not have insurance, and will undergo discussion with the financial counselors in regards to how to approach the scheduling of surgery. She understands that delay of surgery may prolong the recovery of the ulnar motor intrinsics. She also verbalized understanding that due to severity of nerve compression, history, physical exam findings that there may be limited recovery in regards to weakness following surgical intervention. There should however be improvement in pain as well as symptoms associated with aggravation of nerve compression.

[Filing No. 9-2 at 31.]

On appeal, Angela H. argues that the ALJ "assessed the medical significance of [Angela H.'s] new diagnosis of Dupuytren's Contracture and effective inability to open and close her right dominant hand and the extent of limitation … without consideration of an informed opinion of a

medical expert." [Filing No. 16 at 14.] Angela H. then cites Seventh Circuit case law for the proposition that the ALJ had an obligation subject this new evidence (generated long after Dr. Levine's exam in 2019 and the reviewing consultants' opinions were offered) to "medical expert scrutiny before [deciding] such objective evidence is 'consistent with' the RFC…." [Filing No. 16 at 14 (citing *McHenry*, 911 F.3d at 871).] As a result of the failure to submit this new evidence for review, says Angela H., the ALJ erroneously determined that she was capable of handling and fingering items weighing up to 20 pounds for six hours of an eight-hour workday. [Filing No. 16 at 14.] Angela contends that remand is required "so a medical expert can review the aforementioned complex clinical test findings and newfound etiologies." [Filing No. 16 at 17.]

The Commissioner responds that Angela H.'s argument on this front ignores her DLI of June 30, 2021 and whether there is evidence that the condition will last for at least 12 months. [Filing No. 17 at 7 (citing 20 C.F.R. §§ 404.320(b) & 404.1505(a)).] The Commissioner highlights Dr. Graner's April 2021 clinical note that, at that time, Angela H. had a negative tabletop test and that Dr. Graner's note discusses monitoring Angela H. for development of contracture (meaning that at that time, Angela H. did not have contracture). [Filing No. 17 at 8.] As for the EMG test results, the Commissioner argues that it is not clear when this testing took place (because Angela H. did not submit the test results themselves) but that Dr. Graner's opinion interpreting the results post-dates the DLI and the hearing. [Filing No. 17 at 8.] The Commissioner says that Dr. Graner does not discuss "the length of recovery from surgery, nor … indicate that [Angela H.] would be unable to use her right hand frequently after surgery." [Filing No. 17 at 9.] The Commissioner also notes that Angela H. was represented by counsel at her hearing, and counsel informed the ALJ that no opinions from treating sources were forthcoming and, further, that counsel did not request that the SSA retain a medical expert to review the more recent records concerning Angela H.'s

9

right hand or to leave the record open. [Filing No. 17 at 9-10.] The Commissioner says that Angela H.'s argument "boils down to an accusation that the ALJ should have sua sponte delayed the proceedings to retain an additional medical expert based solely on Dr. Graner's April 2021 findings that [Angela H.] had no contracture, with a negative table top test and no required treatment other than monitoring." [Filing No. 17 at 10.] The Commissioner argues that Dr. Graner's April 2021 note was not a "new, significant medical diagnos[i]s" that could have changed the views of the state agency consultants. [Filing No. 17 at 10 (citing *Pavlicek v. Saul*, 994 F.3d 777, 784-85 (7th Cir. 2021)).]

Angela H. replies that evidence of her Dupuytren's Contracture was not trivial evidence, rather it was significant and outcome determinative. [Filing No. 20 at 2.] Angela H. also says that the ALJ was not qualified to conclude that the issue with her right-hand would not last more than 12 months or that it did not result in more significant fingering and handling limitations. [Filing No. 20 at 3.] She adds that the ALJ was not qualified to conclude whether the release surgery recommended by Dr. Graner in the summer of 2021 would return her right hand to a level of functionality that allowed Angela H. to frequently finger and handle items with her right hand. [Filing No. 20 at 4.]

"An ALJ should not rely on an outdated assessment if later evidence containing new, significant medica diagnoses reasonably could have changed the reviewing physician's opinion." *Moreno v. Berryhill*, 882 F.3d 722, 728 (7th Cir. 2018), *as amended on reh'g* (Apr. 13, 2018). The Seventh Circuit "has stated repeatedly that an ALJ may not 'play[ ] doctor and interpret new and potentially decisive medical evidence without medical scrutiny.'" *Kemplen v. Saul*, 844 F. App'x 883, 887 (7th Cir. 2021), *as amended on reh'g in part* (June 21, 2021) (quoting *McHenry*, 911 F.3d at 871). *See also Lambert v. Berryhill*, 896 F.3d 768, 774 (7th Cir. 2018)*; Akin v. Berryhill*, 887

F.3d 314, 317-18 (7th Cir. 2018); *Moreno*, 882 F.3d at 728. However, "not all new evidence will necessitate a remand." *Id.* The Seventh Circuit recently explained in *Kemplen* that whether a remand is warranted or not "comes down to whether the new information 'changed the picture so much that the ALJ erred by continuing to rely on an outdated assessment by a non-examining physician and by evaluating himself the significance of [the subsequent] report,' or whether the updated information was minor enough that the ALJ did not need to seek a second opinion." *Id.* (quoting *Stage v. Colvin*, 812 F.3d 1121, 1125 (7th Cir. 2016)). The Seventh Circuit has observed that "[a] consultative examination is normally required if …there is a change in a condition but the current severity of the impairment is not established." *Poyck v. Astrue*, 414 F. App'x 859, 861 (7th Cir. 2011).

Here, the state agency consultants' opinions were provided on June 21, 2019 and August 23, 2019 and did not address her later-diagnosed Dupuytren's Contracture or any limitations flowing from this condition. [Filing No. 9-3 at 3-15; Filing No. 9-3 at 17-31.] The consultants found that Angela H. had no manipulative limitations. [*Id.*] The potential limitations posed by Angela H.'s Dupuytren's Contracture and how such limitations might impact her RFC are not meaningfully addressed in the ALJ's decision with an explanation that enables the Court to sufficiently trace her reasoning. Furthermore, no medical source offered an opinion addressing Angela H.'s manipulative limitations following the appearance of symptoms in her right hand. While the ALJ cites to the normal tabletop test performed by Dr. Graner in April 2021, the "ability to cite to [this] record[] is not the same as the ability to understand the relevance of these findings to the claimant's symptoms and ability to function." *Misty B. v. Kijakazi*, 2022 WL 4118471, at *7 (S.D. Ind. Sept. 9, 2022). In short, the ALJ's implicit determination that physician notes in the medical record support a finding that Angela H. required no more than a "frequent" handle, finger,

and feel limitation, is an example of an ALJ impermissibly "play[ing] doctor" and "reach[ing] his own independent medical conclusions." *Myles v. Astrue*, 582 F.3d 672, 677 (7th Cir. 2009).

The Court is not persuaded by the Commissioner's argument that Angela H.'s attorney had an obligation to ask for an updated medical assessment. "[T]he ALJ in a Social Security hearing has a duty to develop a full and fair record." *Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2009). Furthermore, "[a]ny presumption that a represented claimant made their best case before the ALJ does not overcome the ALJ's obligation to obtain medical expert interpretations of the record." *Sherry R. v. Saul*, 2021 WL 1884426, at *4 (S.D. Ind. May 11, 2021).

Likewise, the Commissioner's argument that Angela H. did not show that her Dupuytren's Contracture lasted for 12 months fails. A claimant is not required to show that he or she met the 12-month requirement **before** the DLI. *See McQuestion v. Astrue*, 629 F. Supp. 2d 887, 901 (E.D. Wis. 2009). Rather, a claimant can show that she became disabled prior to the DLI and the condition "can be **expected** to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (emphasis added). And, a retrospective diagnosis of an impairment can support a finding of disability. *See Allord v. Barnhart*, 455 F.3d 818, 822 (7th Cir. 2006). The Court agrees with Angela H. that the Commissioner's characterization of her right-hand impairment as a "short-term complaint" is another unqualified medical judgment. [*See* Filing No. 20 at 3.]

In sum, remand is required so that the ALJ can seek the opinion of a medical expert to evaluate Angela H.'s recent Dupuytren's Contracture diagnosis (along with new records that may have been generated) to determine if Angela H. had any greater limitations than those the ALJ included in her RFC determination at the time of her DLI.

B.  Other Issues

The remaining issues raised by Angela H. on appeal are intertwined with the evaluation of her right hand, so the Court need not address those.

IV.
CONCLUSION

For the reasons detailed above, the Court **REVERSES** the ALJ's decision denying Angela H. benefits and **REMANDS** this matter for further proceedings pursuant to 42 U.S.C. § 405(g) (sentence 4) as detailed above.  Final judgment will issue by separate entry.

Date: 3/21/2023

Mario Garcia
United States Magistrate Judge
Southern District of Indiana

**Distribution via ECF to all counsel of record.**